UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ISAAC RUELAZ,

Plaintiff,

v.

LEPRINO FOODS COMPANY,

Defendant.

Case No. 1:24-cv-01017-FJS

ORDER GRANTING LEPRINO FOODS COMPANY'S MOTION FOR SUMMARY JUDGMENT

(ECF No. 30)

Defendant Leprino Foods Company ("Leprino") moves for summary judgment on all Plaintiff Isaac Ruelaz' ("Ruelaz") claims alleged in his complaint. (ECF No. 30.) Ruelaz opposes this motion. (ECF No. 31.) The court, having considered the parties' papers and the record in this case, and having heard oral argument on September 28, 2026, grants Leprino's motion for summary judgment for the reasons set forth below.

I. RELEVANT BACKGROUND

Ruelaz began working for Leprino in Lemoore, California, as a forklift operator on November 16, 2014. (ECF No. 30-5 (joint statement of undisputed facts or "JSUF") ¶ 1.) The essential elements of that job include:

- Lifting boxes of block cheese from knee to mid-chest

- Carrying up to 48 pounds
- Hand stacking items and operating forklift
- The ability to perform these tasks for about seven and a half hours a day, continuously for up to eight hours a day
- Bending
- Twisting
- Forearm supination/pronation.

(JSUF ¶ 2.) Only eight-hour shifts were available at Leprino's Lemoore plant where Ruelaz was employed. (DSUF ¶ 31.)

On March 12, 2023, Ruelaz was injured while operating his forklift. (JSUF at ¶ 3; ECF No. 30-1 at 10.) Following this injury, Ruelaz began a leave of absence and started medical treatment for his injuries. (ECF No. 30-1 at 10.) On June 22, 2023, Ruelaz' doctor, Alex Herrera, filled out Leprino's medical questionnaire and accommodation request form and indicated that the probable duration of the condition was approximately twelve months. (ECF No. 30-2 at 89.) No available positions were identified. (DSUF ¶ 17.)

There were five telephonic meetings between Leprino's human resources representatives and Ruelaz between March 2023 and August 2023. In these meetings, Ruelaz' restrictions were discussed and afterwards the department heads were e-mailed regarding any available positions that could accommodate Ruelaz. (ECF No. 30-3 ¶ 9; DSUF ¶¶ 6, 14, 15, 17, 19.)

The following table summarizes Ruelaz' medically prescribed work restrictions over time:

| Source | Date | Work restrictions |
|---|---|---|
| DSUF ¶ 7<br><br>ECF No. 30-2 at 80-81 | 3/21/23- 4/4/23 | • Avoid repetitive bending and extending of the neck<br>• Wear a wrist brace during work hours |
| DSUF ¶¶ 8, 9, 10<br><br>ECF No. 30-2 at 82-84 | 4/4/23-5/11/23 | • Avoid repetitive bending and extending of the neck |
| DSUF ¶¶ 11, 12, 13, 16, 18, 21, 22, 23, 24, 25 | 5/11/23-2/22/24 | • Avoid forceful repetitive grasping and gripping with right hand<br>• No lifting over 15 pounds with right hand |

| | | |
|---|---|---|
| ECF No. 30-2 at 85-111 | | |
| DSUF ¶ 26<br><br>ECF No. 30-2 at 112-113 | 2/22/24-3/13/24 | • No lifting greater than 10 pounds<br>• No repetitive neck movements<br>• No forklift driving<br>• No work at or above shoulder level<br>• No repetitive work with right hand<br>• No lifting, pulling or pushing more than 10 pounds<br>• No repetitive gripping, grasping or forceful work with right hand |
| DSUF ¶ 30<br><br>ECF No. 30-2 at 217 | 3/15/24 | • Only capable of working four hours per day without significant fatigue<br>• No lifting greater than 25 pounds occasionally from the floor to waist level<br>• No lifting greater than 25 pounds occasionally from the waist to shoulder level<br>• No lifting greater than 20 pounds occasionally above the shoulder<br>• No carrying with both arms more than 25 pounds occasionally at waist level<br>• No carrying (single arm) more than 10 pounds occasionally with the right arm<br>• No carrying (single arm) more than 15 pounds occasionally with the left arm |

On March 13, 2024, in a work status note directed to Leprino that listed Ruelaz' modified duties, Ruelaz' doctor, Kevin Calhoun, stated that "[i]f employer is unable to accommodate these restrictions the patient will be considered [totally temporarily disabled]." (ECF No. 30-2 at 114; JSUF at ¶ 5.) On March 15, 2024, in a letter regarding Ruelaz' return to work capabilities, Ruelaz' doctor stated that the forklift operator position requires "**HEAVY physical demand level**" and that "Mr. Ruelaz **does not** meet the strength requirements of this physical demand level." (ECF No. 30-2 at 116 (emphasis in original).) Additionally, on March 15, 2024, Ruelaz' medical team indicated in Leprino's medical questionnaire concerning health condition and potential accommodation request that Ruelaz' condition would "cause episodic 'flare ups' periodically that will hinder Employee in safely performing their job functions" from "1–3 times per week, lasting anywhere from 2 hours to all day depending on how severe the flare up is." (ECF No. 30-2 at 198.) On March 28, 2024, Ruelaz' doctor, Kevin Calhoun, filled out Leprino's medical questionnaire and accommodation request form and indicated that the probable duration of the condition was "6 – 8 months (subject to change depending on progress)." (ECF No. 30-2 at

197.) This added yet another three to five months beyond what Dr. Herrera previously predicted in June 2023. (*See* ECF No. 30-2 at 89; ECF No. 30-2 at 197.) The March 2024 projection for the duration of Ruelaz' condition neither acknowledged nor reconciled the projection made in June 2023.

On March 22, 2024, Ruelaz exhausted his twelve-month job-protected Leprino company medical leave. (DSUF ¶ 28.) On April 26, 2024, Ruelaz' employment with Leprino was terminated (JSUF at ¶ 1) because (1) he was still unable to perform his essential job functions, (2) no position at Leprino's Lemoore West plant could accommodate Ruelaz' work restrictions, and (3) his leave with Leprino was exhausted. (DSUF ¶¶ 28, 32.)

As of March 2026, Plaintiff's medical restrictions remain the same and he is still classified as temporarily totally disabled. (DSUF ¶ 33.)[1] Ruelaz argues that he should have been accommodated with six-to-eight months of additional leave because Ruelaz' doctor stated that his work restrictions "will have a possible duration of 6-8 months." (ECF No. 31 at 18.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex*, 477 U.S. at 322–23

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate that the fact in contention is material (i.e., a fact that might affect the outcome of the suit under the governing law). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

---

[1] Plaintiff does not dispute this factually but rather objects to this based on relevance. (ECF No. 31-1 (Plaintiff's disputed material facts or "PDMF") ¶ 33.)

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). And that the dispute is genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party). *See Anderson*, 477 U.S. at 250.

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Because FEHA is an anti-discrimination law modeled after the federal Americans with Disabilities Act ("ADA"), courts analyze FEHA claims under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Zeinali v. Raytheon Co.*, 636 F.3d 544, 546 (9th Cir. 2011); *Alejandro v. ST Micro Elecs., Inc*, 178 F. Supp. 3d 850, 859 (N.D. Cal. 2016). Although the plaintiff generally has the burden of establishing a prima facie case of discrimination at trial, the burden is reversed when the employer moves for summary judgment. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011). The employer has the burden to show either that "(1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.*

## III. <u>DISCUSSION</u>

Defendant seeks summary judgment in its favor on each of plaintiff's claims before this court including: (1) disability discrimination in violation of FEHA; (2) failure to reasonably accommodate a disability in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) retaliation in violation of FEHA; (5) failure to prevent discrimination and retaliation in violation of FEHA; and (6) wrongful termination in violation of public policy.

### A. <u>Disability Discrimination</u>

A prima facie case for disability discrimination under FEHA, requires that the plaintiff show: "(1) he suffered from a disability, (2) he could perform the essential duties of his job with

or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability." *McInteer v. Ashley Distrib. Servs., Ltd.*, 40 F. Supp. 3d 1269, 1281 (C.D. Cal. 2014). The parties agree that Ruelaz suffers from a disability and further agree that he was subjected to adverse employment action. (*See* JSUF ¶¶ 1, 3.) Moreover, the parties agree that Ruelaz cannot perform the essential duties of his job without reasonable accommodation.[2] (*See* JSUF ¶¶ 2, 4-5.) The court, therefore, focuses on whether Ruelaz can perform the essential duties of his job with reasonable accommodation and, if so, whether he was subjected to adverse employment action "because" of his disability.

1. *Reasonable Accommodation*

Section 12940(a) of FEHA prohibits an employer from discharging a physically disabled employee because of that employee's physical disability. An employer may, however, lawfully discharge an employee who "is unable to perform his or her essential duties ... even with reasonable accommodations." Cal. Gov't Code § 12940(a)(1). Before determining whether Ruelaz can perform the essential duties of his job with reasonable accommodation, the court must determine what constitutes reasonable accommodation in this case. Although a leave of absence can constitute reasonable accommodation in some cases, this leave must be "finite" (i.e., it must be likely that at the end of the leave, "the employee would be able to perform his or her duties"). *Rosado v. Leprino Foods Co.*, No. 22-cv-02302, 2025 WL 1017529, at *3 (E.D. Cal. Apr. 4, 2025) (citing *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999)). Leave is not considered finite where each doctor's note extended the leave of absence. *Id.* "[E]ven a finite period of leave is not a reasonable accommodation if it is not likely that following the leave the employee would be able to perform his or her duties." *Id.* (citation modified). Moreover, "the fact that a prior leave was granted and was unsuccessful may be a relevant consideration in determining whether additional leave would be a reasonable accommodation." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 n.13 (9th Cir. 2001) (discussing the ADA).

Ruelaz argues that Leprino's reason for terminating his employment was pretextual and

[2] Ruelaz' counsel conceded that Ruelaz could not perform the essential job functions of the forklift operator position without accommodation at oral argument.

that he should have been accommodated with additional leave beyond the original twelve months because Ruelaz' medical provider stated that his work restrictions "will have a possible duration of 6-8 months" after March 2024. (ECF No. 31 at -18.)[3] Plaintiff overlooks, however, that the six-to-eight-month projection is "subject to change depending on progress." (ECF No. 30-2 at 197.) Interminable leave is not a reasonable accommodation. The keystone issue in this motion, therefore, is whether the March 2024 projection of a possible return to work in six-to-eight months creates a disputed issue of fact as to whether Ruelaz could perform his job responsibilities with reasonable accommodation.

"Although the evidence must be viewed in a light most favorable to the opponent of the motion, and all reasonable inferences must be drawn in his favor, the inferences are limited to those upon which a reasonable jury might return a verdict." *U.S. ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022) (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021)). There must be more than a "scintilla of evidence" in support of the non-moving party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2505.

---

[3] At oral argument, Ruelaz counsel also raised alternative accommodations that could have been afforded his client (e.g., assistance from other employees, part-time work, etc.). The proposed accommodations were only proffered in this litigation and there is no evidence before the court that creates a genuine issue that the proposed accommodations are, in fact, viable. For example, "FEHA does not require the employer to create a new position to accommodate an employee, at least when the employer does not regularly offer such assistance to disabled employees." *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1226 (2006); *Canupp v. Child.'s Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 779 (E.D. Cal. 2016). An employer is not required to modify the position but only to consider whether the employee can perform the tasks or alternatively be placed in a different position. *Dep't of Fair Emp. & Hous.*, 642 F.3d at 744. Although part-time work may be considered a reasonable accommodation, the ADA does not require an employer to create a new part-time position where none previously existed. *Treanor v. MCI Telecom's Corp.*, 200 F.3d 570, 575 (8th Cir.2000). *See also Raine*, 135 Cal. App. 4th at 1224, 1226 (holding that federal case law applying the ADA is appropriate when interpreting FEHA because FEHA is modeled on the ADA and the language is virtually identical). Finally, Plaintiff's counsel posited at oral argument that alternative equipment could be used to accommodate Plaintiff, but Plaintiff provides no evidence of this equipment or the equipment's availability in April 2024.

The court concludes that no reasonable inference can be drawn in Plaintiff's favor regarding additional leave as a "reasonable accommodation" for three reasons.

First, as reflected in the timeline chart recited above, Ruelaz' restrictions became more severe over time. The restrictions in March 2023 included (1) avoiding repetitive bending and extension of the neck and (2) wearing a wrist brace during work hours. (DSUF ¶ 7; ECF No. 30-2 at 80-81.) Additional restrictions were introduced in the ensuing months culminating in a collection of restrictions by March 2024 that included a four-hour limitation on working each day, 10- and 15-pound restrictions on carrying respectively with the right and left arms, increasing limitations on lifting items from the floor to above the shoulder, etc. (DSUF ¶ 30; ECF No. 30-2 at 217.) It is not reasonable to infer that Ruelaz would return to work in six-to-eight months in March 2024 when, in the preceding twelve months, his injury necessitated ever more restrictions. This history between March 2023 and March 2024 demonstrates that the caveat to the March 2024 projection—"subject to change depending on progress"—controlled over the proffered six-to-eight-month timeline.

Second, the March 2024 projection does not acknowledge, much less reconcile, the June 2023 projection. By the time the March 2024 projection was authored, Ruelaz was ten months into what was previously projected to be a twelve-month recovery period. Yet the March 2024 projection fails to explain why optimism over the additional time is warranted given the contradiction that revised projection represents. And the caveat attending the March 2024 projection—"subject to change depending on progress"—amplifies this omission. It is unreasonable to infer that the March 2024 projection has merit where that projection necessarily invalidates the June 2023 projection, but the former does not acknowledge the latter or explain the reason why the revised projection is firmer.

Third, the parties and the court now know that as of October 2026, Ruelaz remains unable to work. Ruelaz asserts that he is entitled to the contemporaneous uncertainty of the March 2024 projection's accuracy. Yet, as described below, the Ninth Circuit has considered evidence of post-termination inability to perform a job's essential functions in affirming the denial of other FEHA disability discrimination claims. *See infra* (discussing *Lawler v. Montblanc N. Am., LLC*, 704

F.3d 1235, 1243 (9th Cir. 2013)). The facts here show that Leprino provided twelve months of leave to Ruelaz. As that twelve-month window closed, Ruelaz provided a qualified projection of returning to work where that qualification ran counter to the actual progress—or lack thereof—that Ruelaz made in the ten prior months. The fact that the months following March 2024 confirmed the likelihood of the qualifier negating the six-to-eight-month projection informs whether the inference Ruelaz now seeks to draw in his favor is reasonable. If this case were to proceed to trial, a jury would be aware of Ruelaz' ongoing inability to perform the essential functions of his work.

The Ninth Circuit's decision in *Lawler* is instructive. There, as here, a plaintiff alleged disability discrimination under FEHA. 704 F.3d at 1238. The Ninth Circuit affirmed summary judgment for the employer where, as here, plaintiff "admitted that her disability makes it impossible for her to fulfill the duties of her position and that she has been unemployed since [termination in October 2009], has not applied for any position, has made no effort to secure employment, and has exhausted her disability benefits." *Id.* at 1243. Notably, these findings rely in large measure on disability that continued years *after* termination, even though plaintiff in *Lawler* was contemporaneously projected to return to work within five months. *Id.*

So too here. Ruelaz was afforded twelve months of leave and the qualified March 2024 projection shortly before his termination forecasted an additional six-to-eight months of leave. But like *Lawler*, Ruelaz remains unemployed, he has not applied for a position, and has made no effort to secure employment. (*Compare id. with* DSUF ¶ 33; ECF No. 30-1 at 14; ECF No. 30-2 at 8-12, 150.) Considering (1) the ignored medical history that proceeded the March 2024 projection, (2) the unacknowledged and unreconciled conflicting projection that Ruelaz would recover by June 2024, and (3) the now-known fact that Ruelaz remains unable to work more than two years after the March 2024 projection, the court concludes that the March 2024 six-to-eight-month projection does not create a genuine issue of material fact that Ruelaz could have performed his work with reasonable accommodation. This finding is consistent with the holding of *Lawler*. Ruelaz' inability to establish this element is fatal to his count for disability discrimination under FEHA.

B. Causation

Ruelaz' inability to perform the work is a legitimate, nondiscriminatory reason for terminating his employment because the employee could not perform the essential functions of the position. *See Dep't of Fair Emp't & Hous.*, 642 F.3d at 746 (citing Cal. Code Regs. tit. 2, § 7293.8(b)), *cited in Lawler*, 704 F.3d at 1243-44. Consequently, "there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Dep't of Fair Emp. & Hous.*, 642 F.3d at 745.

C. Failure to Reasonably Accommodate a Disability, Retaliation, Failure to Prevent Retaliation and Discrimination, and Failure to Engage in the Interactive Process

Ruelaz' claims for failure to reasonably accommodate a disability, retaliation, failure to prevent retaliation and discrimination, and failure to engage in the interactive process in violation of FEHA are all dependent on Ruelaz being able to perform the essential duties of his position with or without accommodation. *See Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 977 (2008) (holding an "employee's ability to perform the essential functions of a job is a prerequisite to liability" for failure to accommodate); *Jackson v. Simon Prop. Grp., Inc.*, 795 F.Supp.2d 949, 962 (N.D. Cal. 2011) (holding an employee's failure to make out a prima facie case of disability discrimination was fatal to plaintiff's claim for failure to engage in the interactive process and retaliation); *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 923 (9th Cir. 2017) ("FEHA does not impose liability for failure to engage in the interactive process when no reasonable accommodation is possible"); *Escobedo v. Godfrey Trucking, Inc.*, No. EDCV 26-929 JGB, 2026 WL 1288637, at *4 (C.D. Cal. May 5, 2026) (employee's retaliation in violation of FEHA claim based on disability fails as a matter of law when the disability claim fails); *Miller v. Dep't of Corr. & Rehab.*, 105 Cal. App. 5th 261, 284 (2024) (failure to prevent discrimination is dependent upon a successful claim for discrimination); *Lelaind v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (failure to prevent discrimination or retaliation requires plaintiff be subjected to discrimination or retaliation).

Having found that Ruelaz is unable to perform the necessary function of employment with

or without reasonable accommodation under the evidence presented in this motion, Leprino is entitled to summary judgment in its favor for these claims as well.

D. Wrongful Termination in Violation of Public Policy

"Under California common law, although an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Escobedo*, No. EDCV 26-929 JGB, 2026 WL 1288637, at *4 (citation modified). The public policy that Ruelaz points to is FEHA's prohibition of discrimination against employees based on a disability. (ECF No. 1 ¶ 56-62.) Because Leprino is entitled to judgment on Ruelaz' claims under FEHA, plaintiff's derivative claim of wrongful termination in violation of public policy fails as a matter of law. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017) ("A common law claim for wrongful termination in violation of public policy requires a showing that there has been a violation of a fundamental public policy embodied in statute."); *Tumblin v. USA Waste of California, Inc.,* No. CV 16-2902, 2016 WL 3922044, at *8 (C.D. Cal. July 20, 2016) (a plaintiff failing to state a claim for age discrimination under FEHA could not state a derivative claim of wrongful termination in violation of public policy).

E. Punitive Damages

Under California law, punitive damages may be appropriate when "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Because none of Ruelaz' other claims survive Leprino's summary judgment motion, no claims remain on which Ruelaz can recover such damages. *See Mauran v. Wal-Mart Stores, Inc.*, No. 16-cv-07808, 2017 WL 11636674, at *8 (C.D. Cal. Sept. 22, 2017) (granting summary judgment on punitive damages when the court granted summary judgment on the underlying discrimination claims).

IV. CONCLUSION

For the reasons set forth above:

1. Leprino's motion for summary judgment (ECF. No. 30) is GRANTED;

2. All currently scheduled dates for further proceedings in this action are VACATED; and

3. The clerk of the court is directed to close this case.

IT IS SO ORDERED.

Dated: October 30, 2026

UNITED STATES MAGISTRATE JUDGE